UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

QWEST COMMUNICATIONS CORPORATION, a Delaware corporation,

    Plaintiff,

v.

HERAKLES, LLC, a Delaware limited liability corporation, d/b/a HERAKLES DATA; SANDY BEACHES I LP, a California limited partnership; RIPTIDE I LP, a California limited partnership; CAPITAL LEASE FUNDING, INC., A Delaware corporation; CAPITAL LEASE FUNDING, LP, a Delaware limited partnership,

    Defendants.

No. 2:07-cv-00393-MCE-KJM

MEMORANDUM AND ORDER

----oo0oo----

Through the present action, Plaintiff Qwest Communications Corporation ("Qwest") seeks damages from Defendants Herakles, LLC, Sandy Beaches I LP, Riptide I LP, Capital Lease Funding, Inc., and Capital Lease Funding, LP (collectively, "Defendants") for deceptive advertising in violation of the Lanham Act, 15 U.S.C. § 1125, as well as pendant state law claims.

1

Presently before the Court is Defendants' Capital Lease Funding, Inc., and Capital Lease Funding LP ("CapFunding Defendants") Motion to Stay Discovery pending resolution of the CapFunding Defendants' Motion to Dismiss.

## BACKGROUND

This action arises from a contract between Qwest and Wavve, a now defunct company who assigned its rights to Defendant Herakles LLC ("Herakles"), for the construction and management of a data center in Sacramento.  Under the terms of the contract, Qwest leased the data center from Sandy Beaches I LP ("Sandy Beaches").  Herakles was to act as the "exclusive agent" of Qwest in managing the data center.  Riptide I LP ("Riptide") subleased a portion of the data center from Qwest, and operates its section in competition with the Plaintiff.  The CapFunding Defendants arranged for the financing involved with the data center.

Qwest leased the data center for a period of ten years, with the option to renew for another nine.  Qwest used the space to provide co-location, data center, telecommunications, internet access, content hosting, network management and internet security services.  The lease agreement provided that the center would be a "Tier IV data center" guaranteeing 99.999% operational availability.  A service agreement between Qwest and Wavve, later assigned to Herakles, provided that Herakles would manage the data center, providing security and maintenance.

///
///

In its Complaint, Qwest alleges that Herakles, Riptide, Sandy Beaches and the CapFunding Defendants are alter egos of one another. Qwest claims that Herakles breached the contract by diverting customers from Qwest to their related entity Riptide, a subtenant competitor in the data center. Qwest claims that Herakles engaged in deceptive advertising by purporting to own the data center, and that Herakles further misrepresented the property in sign-in sheets by omitting Qwest's name.

In support of alter ego liability, Qwest alleges that the Defendants have common ownership, share offices, employees and bank accounts and use one company as a conduit for another. Qwest alleges that this practice enables Herakles to breach its contract without liability, all the while diverting customers to Riptide and collecting Qwest's rent payments through Sandy Beaches and the CapFunding Defendants.[1]

The CapFunding Defendants have filed a Motion to Dismiss Qwest's Complaint pursuant to F. R. Civ. P. 12(b)(6), alleging failure to properly state a claim for alter ego liability, among other things. This Motion to Dismiss is scheduled for hearing in this Court on September 14, 2007. Presently before the Court is the CapFunding Defendants' Motion to Stay Discovery pending resolution of the Motion to Dismiss. For the reasons stated below, CapFunding Defendants' Motion to Stay Discovery is DENIED.

///
///

---

[1] The CapFunding Defendants collect a monthly advisory fee connected to originating the data center loan of approximately $66,000.00 per month, through November of 2010. This fee is collected out of rent payments made by Qwest.

3

**STANDARD**

The district courts have broad discretion to stay discovery in a case while a dispositive motion is pending. *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) (citing *Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977)). A district court's decision to allow or deny discovery is reviewable only for abuse of discretion. *Munoz-Santana v. INS* 742 F.2d 561, 562 (9th Cir. 1984).

Motions to stay discovery may be granted upon a showing of good cause by the moving party or where "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(4), *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 285-86 (S.D.Cal. 2000). Generally, however, such motions are disfavored because discovery stays may interfere with judicial efficiency and cause unnecessary litigation in the future. *O'Neal v. NCO Fin. Sys. Inc.* 2006 U.S. Dist. Lexis 83505 at 5 (S.D. Cal. 2006).

In deciding whether to grant a protective order staying discovery before other pending motions can be heard, the Court must apply a two-prong analysis:

1) The pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed.

4

1     2)    The Court must determine whether the pending
2           dispositive motion can be decided absent
3           additional discovery.

*See Pac. Lumber Co. v. Nat'l Union Fire Ins. Co.*, 220 F.R.D. 349, 352 (N.D. Cal. 2003) (citing *Church of Scientology of San Francisco v. IRS*, 991 F.2d 560, 563 (9th Cir. 1993).

If the Court answers these two questions in the affirmative, a protective order may issue.  However, before issuing a protective order, the Court must first "peek" at the merits of the pending dispositive motion in order to assess the validity of the stay of discovery motion.  *Seven Springs Ltd. P'ship v. Fox Capital Mgmt. Corp.,* 2007 U.S. Dist. LEXIS 32068 at *5-6 (E.D. Cal. 2007).

**ANALYSIS**

As a preliminary matter, the Court must determine if Plaintiff's Motion to Stay Discovery satisfies the two-pronged threshold analysis.  The pending dispositive Motion to Dismiss certainly satisfies the second prong, as such a Motion tests the sufficiency of the allegations themselves and does not require a factual inquiry.  Whether the Motion to Dismiss is truly dispositive so as to satisfy the first prong is a closer question.

When considering the dispositive nature of a Motion to Dismiss, the Court notes the likelihood that leave to amend will be granted.

The Court should "freely give[]" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a), *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992).

In the instant case, the Court finds no undue delay or dilatory tactic on the part of Qwest, nor does it find undue prejudice to the CapFunding Defendants should leave to amend be granted. In considering whether Qwest could cure deficiencies in its alter ego pleadings, the Court notes that Qwest has already alleged several elements of alter ego liability. If the Court dismissed Qwest's Complaint, it is likely that Qwest would have little difficulty satisfying the requirements of alter ego liability, predisposing the Court to grant leave to amend. Although this points to the probability that the Motion to Dismiss would in fact not be dispositive, it is unnecessary to definitively pass upon the issue, as the validity of the Motion to Stay Discovery is questionable given the apparent strength of Qwest's Complaint.

Assuming the CapFunding Defendants have indeed passed the threshold inquiry, the Court next "peeks" at the merits of the Motion to Dismiss to assess the validity of the Motion to Stay Discovery. If the Motion to Dismiss is completely devoid of merit, it will not stand to bar discovery.

On the other hand, if the motion will surely be granted, this Court would properly exercise its discretion to block discovery and prevent the wasting of resources and time. *Seven Springs Ltd. P'ship*, 2007 U.S. Dist. LEXIS 32068 at *5-6 (E.D. Cal. 2007). The parties do not agree as to the proper outcome should the merits of the Motion to Dismiss fall somewhere between these two extremes.

Plaintiff advances the theory that a Motion to Stay Discovery is only granted where the court is certain that the plaintiff has not stated a claim, citing *Wood v. McEwan,* 644 F.2d 797 (9th Cir. 1981). Plaintiff would hence have this Court grant the CapFunding Defendant's Motion only if it the success of the pending dispositive motion is a virtual certainty. The CapFunding Defendants support a lesser threshold, arguing that the Court may stay discovery where granting the pending motion is "clearly possible," citing the *GTE Wireless* court's reasoning. This Court does not believe that the CapFunding Defendants' Motion to Dismiss rises to either level of certainty, and therefore does not pass upon this unsettled area of the law.

The CapFunding Defendants move to dismiss Qwest's Complaint on grounds that alter ego liability is not sufficiently pled.[2] A review of the claims, as outlined by Qwest, paints a different picture. Qwest makes several factual allegations regarding the alter ego nature of the Defendants.

---

[2] Alter ego liability is established by proving 1) such unity of ownership and interest that the separate personalities of the corporations do not exist, and 2) if the acts are treated as those of separate corporations, an inequitable result will follow. *See SEC v. Hickey,* 2003 U.S. App. LEXIS 13563 at *11 (9th Cir. 2003).

7

1 Qwest alleges a unity of interest and ownership, giving examples
2 of corporate officers common to both Riptide and the CapFunding
3 Defendants, joint ownership of the data center by the CapFunding
4 Defendants and shared office space and employees between the
5 various Defendants.  In contending that injustice would result
6 from protecting the corporate shell as crafted by Defendants,
7 Qwest alleges that the Defendants use one company as the conduit
8 for another, with one entity accepting payment for the benefit of
9 the others.  This type of arrangement, where one part of the
10 company holds the assets and another part of the company holds
11 the liabilities could result in injustice if Defendants are
12 treated as separate corporate entities.  These allegations would
13 appear to satisfy the requirements for alter ego liability.
14      Given the strength of Qwest's alter ego allegations, the
15 Court cannot say that the CapFunding Defendants have at least a
16 fifty percent chance of succeeding on their Motion to Dismiss,
17 and certainly do not meet the standard advanced by Qwest.
18 Accordingly, the CapFunding Defendants' Motion to Stay Discovery
19 is DENIED.

**CONCLUSION**

21    For the reasons stated above, the CapFunding Defendants'
22 Motion to Stay Discovery is DENIED.
23    IT IS SO ORDERED.

Dated: August 7, 2007

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE