UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| QWEST COMMUNICATION, | No. 2:07-cv-00393-MCE-KJM |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| HERAKLES, LLC, et al., | |
| Defendants. | |

Through the present action, Plaintiff Qwest Communications Corporation ("Qwest") seeks damages from Defendants Herakles, LLC ("Herakles"), Sandy Beaches I LP ("Sandy Beaches"), Riptide I LP ("Riptide"), and Capital Lease Funding, Inc. and Capital Lease Funding, LP (collectively "CapLease Defendants")[1], for deceptive advertising, breach of contract, constructive fraud and breach of fiduciary duty, statutory and common law unfair competition,

---

[1] The CapLease Defendants have collectively filed another Motion to Dismiss in this matter. Because both the allegations levied against the CapLease Defendants, as well as the resolution of their motion, vary from the other Defendants considered herein, the CapLease Motion will be addressed by separate Order.

1

tortious interference with both prospective economic advantage and with contract, unjust enrichment, civil conspiracy, and aiding and abetting.

Pursuant to Federal Rule of Civil Procedure 12(b)(6)[2], Herakles, joined by Sandy Beaches and Riptide (collectively "Defendants"), filed the present Motion to Dismiss Count VI of Qwest's First Amended Complaint ("FAC") - Common Law and California Civil Code § 1573 - Constructive Fraud and Breach of Fiduciary Duty. As set forth below, the Motion is GRANTED with leave to amend.[3]

## BACKGROUND[4]

This action arises from the circumstances surrounding the performance of three contracts which governed the construction, occupation, and management of a data center ("Data Center") in Sacramento, California. Originally, Qwest and Wavve Telecommunications, Inc. ("Wavve") contemplated entering into only one agreement to achieve these objectives. However, when the now defunct Wavve was unable to obtain financing from the CapLease Defendants, the parties restructured their arrangement via the three current contracts.

---

[2] Unless otherwise stated, all further references to a Rule are to the Federal Rules of Civil Procedure.

[3] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

[4] The factual assertions in this section are based on the allegations in Plaintiff's FAC unless otherwise specified.

First, Qwest leased the Data Center from Sandy Beaches ("Lease"). Next, Qwest subleased a portion of the Data Center to Riptide ("Sublease"). Finally, Qwest entered a Real Estate Services Agreement ("RESA") with Wavve for the management of Qwest's portion of the Data Center.

Riptide subsequently assigned its rights in the Sublease to Herakles. Wavve assigned its rights in the RESA to Surferr LLC, an entity alleged to be related to Herakles, Sandy Beaches, and Riptide. Either Surferr LLC then assigned its rights in the RESA to Riptide, who subsequently re-assigned those rights to Herakles, or Surferr LLC assigned its rights directly to Herakles. Qwest alleges that Herakles is now both its competitor/sublessor tenant and the manager of Qwest's portion of the Data Center.

The Lease terms extend for a period of ten years, with the option to renew for another nine. Qwest uses the leased space to provide co-location, data center, telecommunications, internet access, content hosting, network management, and internet security services. The Lease provides for a "Tier IV data center" with 99.999% operational availability and contains a confidentiality clause, which, according to Qwest, Sandy Beaches has violated.

Qwest alleges that the RESA and an alleged oral agreement between Qwest and Herakles require Herakles to act as Qwest's "exclusive agent" in managing the Data Center and Qwest further alleges that the parties agreed that the Data Center manager would be the "face of Qwest" to Qwest's customers and potential customers.

3

1  However, Qwest claims that, instead, Herakles, as the current
2  manager, diverted customers from Qwest to itself, in its separate
3  capacity as Qwest's sublessor.
4      Qwest also claims that Herakles engaged in deceptive
5  advertising by making statements purporting to be the Data Center
6  owner on the Herakles website and within the Data Center.
7  Additionally, Qwest alleges that Herakles misrepresented the
8  property in Data Center sign-in sheets by omitting Qwest's name
9  on the logs and that Herakles took Qwest's proprietary customer
10 and potential customer information.
11     Qwest further states that Herakles has failed to perform
12 certain construction work as obligated under the RESA and that,
13 in its capacity as sublessor, Herakles has failed to hire a
14 required third-party manager for its own portion of the Data
15 Center.  Instead, despite being a competitor of Qwest, Herakles
16 allegedly manages both the Qwest facility and its own facility,
17 to save itself added management costs.
18     Finally, Qwest alleges that Herakles, Riptide, and Sandy
19 Beaches are alter egos of one another.  Qwest alleges that the
20 Defendants have common ownership, use one company as a conduit
21 for another, and share offices, employees, and bank accounts.
22 Qwest alleges that this practice enables Herakles to breach its
23 contract without liability, all the while collecting Qwest's rent
24 payments through Sandy Beaches and diverting customers to itself.
25 ///
26 ///
27 ///
28 ///

4

1  On April 21, 2008, Plaintiff filed its FAC in this Court
2 under federal question jurisdiction.  Plaintiff alleges multiple
3 causes of action in its FAC, namely: deceptive advertising,
4 breach of contract, constructive fraud and breach of fiduciary
5 duty, statutory and common law unfair competition, tortious
6 interference with both prospective economic advantage and with
7 contract, unjust enrichment, civil conspiracy, and aiding and
8 abetting.  Plaintiff seeks both compensatory and punitive
9 damages, restitution, disgorgement, specific performance, and
10 statutory attorney's fees and costs.
11  On May 13, 2008, Herakles filed this Motion to Dismiss Count
12 VI of Qwest's FAC - Common Law and California Civil Code § 1573 -
13 Constructive Fraud and Breach of Fiduciary Duty.  Herakles
14 challenges Count VI pursuant to Rule 12(b)(6), alleging that
15 Qwest failed to state a claim that there is any fiduciary,
16 confidential, or other relationship that would impose fiduciary
17 duties on Herakles, and thus there can be no claim of
18 constructive fraud or breach of fiduciary duty.  Sandy Beaches
19 and Riptide join in this Motion.

**STANDARD**

**A. Motion to Dismiss Under Rule 12(b)(6)**

 On a motion to dismiss for failure to state a claim under
Rule 12(b)(6), all allegations of material fact must be accepted
as true and construed in the light most favorable to the
nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336,
337-38 (9th Cir. 1996).

5

1  Rule 8(a)(2) requires only "a short and plain statement of the
2  claim showing that the pleader is entitled to relief," in order
3  to "give the defendant fair notice of what the... claim is and
4  the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41,
5  47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  While a complaint
6  attacked by a Rule 12(b)(6) motion to dismiss does not need
7  detailed factual allegations, a plaintiff's obligation to provide
8  the "grounds" of his "entitlement to relief" requires more than
9  labels and conclusions, and a formulaic recitation of the
10 elements of a cause of action will not do.  Bell Atl. Corp. v.
11 Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and
12 quotations omitted).  Factual allegations must be enough to raise
13 a right to relief above the speculative level.  Id. at 1965
14 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §
15 1216, pp. 235-236 (3d ed. 2004) ("The pleading must contain
16 something more... than... a statement of facts that merely
17 creates a suspicion [of] a legally cognizable right of action").
18      If the court grants a motion to dismiss a complaint, it must
19 then decide whether to grant leave to amend.  The court should
20 "freely give" leave to amend when there is no "undue delay, bad
21 faith[,] dilatory motive on the part of the movant... undue
22 prejudice to the opposing party by virtue of... the amendment,
23 [or] futility of the amendment...."  Fed. R. Civ. P. 15(a);
24 Foman v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to
25 amend is only denied when it is clear that the deficiencies of
26 the complaint cannot be cured by amendment.  DeSoto v. Yellow
27 Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).
28 ///

**B. General Pleading Requirements**

"Rule 8(a)(2)...requires a 'showing,' rather than a blanket assertion of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Twombly, 127 S. Ct. at 1965 n.3. (Factual allegations necessary to plead "grounds" on which claim rests.) A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.  If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  Nevertheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 1965.

Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud."  "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  Neubronner v. Milken, 6 F.3d 666, 671-72 (9th Cir. 1993) (internal quotations and citations omitted).  "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity."  Id. at 672.

///
///

7

## ANALYSIS

"In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, and resulting in damages to another. Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated-that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud." Barrett v. Bank of America, 183 Cal. App. 3d 1362, 1368-69 (4th Dist. 1986) (internal citations and quotations omitted).

The elements of constructive fraud are: 1) a fiduciary or confidential relationship; 2) an act, omission, or concealment involving a breach of that duty; 3) reliance; and 4) resulting damage. Neilson v. Union Bank of California, 290 F. Supp. 2d 1101, 1142 (C.D. Cal. 2003). Breach of fiduciary duty constitutes a constructive fraud. California Real Estate Loans, Inc. v. Wallace, 18 Cal. App. 4th 1575, 1581 (1st Dist. 1993). While there has been some discussion between the parties regarding the appropriate pleading standard for constructive fraud, this Court reiterates that Qwest must meet Rule 9(b)'s particularity requirements for pleading fraud.

///
///
///
///
///

1  An agency relationship creates a fiduciary duty.  Maganallez
2  v. Hilltop Lending Corp., 505 F. Supp. 2d 594, 608 (N.D. Cal.
3  2007).  As noted in this Court's March 20, 2008 Order ("Order")
4  whether or not Herakles is considered to be an independent
5  contractor to Qwest under the RESA, "[o]ne who contracts to act
6  on another's behalf and is subject to the other's control ... may
7  still be acting as an agent and also as an independent
8  contractor."  In re Coupon Clearing Service, Inc., 113 F.3d 1091,
9  1100 (9th Cir. 1997).

10  "One of the chief characteristics of an agency relationship
11  is the authority to act for and in the place of the principal for
12  the purposes of bringing him or her into legal relations with
13  third parties."  DSU Aviation, LLC v. PCMT Aviation, LLC, 2007 WL
14  3456564, *5 (N.D. Cal. 2007).  "The other important aspect in
15  determining the existence of an agency relationship is the degree
16  of control exercised by the principal over the activities of the
17  agent."  Id.  "If the principal has the right to control the
18  agent's day-to-day operations, then an agency relationship
19  exists.  If, however, the principal has no control over the
20  day-to-day operations and only has [the] right to dictate the end
21  result of the agent's activities, then an 'independent
22  contractor' relationship exists."  Figi Graphics, Inc. v. Dollar
23  General Corp., 33 F. Supp. 2d 1263, 1266 (S.D. Cal. 1998) (citing
24  Coupon Clearing Services, 113 F.3d at 1099-1100).

25  The parties primary disagreement is whether Herakles is an
26  agent of Qwest under the RESA or the alleged oral agreement, and
27  if so, whether Qwest has satisfactorily pled the elements of
28  constructive fraud under the particularity standard of Rule 9(b).

9

1  More specifically, the parties disagree as to which factors Qwest
2  must allege in order to properly claim that an agency
3  relationship exists between the parties.
4      Qwest asserts that an agency relationship exists between
5  itself and Herakles because 1) Qwest controlled Herakles, and
6  2) Herakles had the "authority to transact ... or manage some
7  affair" on Qwest's behalf. Coupon Clearing Service, 113 F.3d at
8  1099.  In its FAC, Qwest lists multiple allegations relating to
9  its right to control Herakles:

> a. Qwest has the right to control whether and how the DataCenter is branded;
>
> b. Qwest has the right to control the prospective customers of Qwest to whom Herakles provides tours of the DataCenter and when the tours are provided;
>
> c. Qwest has the right to control whether and what information Herakles shares with Qwest customers and prospective customers about DataCenter services and operations, generally, and Qwest's services and operations particularly.
>
> d. Qwest has the right to control Herakles in that if Herakles "fails to perform any of the obligations to be performed by it under [the RESA] or otherwise" Qwest has the right to terminate or remove Herakles from its responsibilities under the RESA. RESA, at Art. 4.

FAC ¶ 104.  Qwest also lists multiple allegations relating to its entrusting Herakles with the authority to transact and manage affairs on Qwest's behalf, including:

> ...providing tours of the DataCenter to Qwest's customers and prospective customers... interfac[ing] with Qwest's customers concerning services and operations... [being] Qwest's presence at the DataCenter... [as] the face of Qwest at the DataCenter for purposes of representing Qwest and its interest at the DataCenter... actively portray[ing] the DataCenter as a Qwest data center, and forbear[ing] from portraying the DataCenter as a Herakles data center... accurately portray[ing] the facts about the DataCenter... maintain[ing] its customer and potential

10

1
2
3
4
>     customer information in a confidential manner, and...
>     forbear[ing] from using such information to its
>     competitive advantage... [and] forbear[ing] from
>     competing against Qwest for entities whom Qwest either
>     had obtained as customers or who Qwest was actively
>     seeking, or who Qwest had actively sought to become a
>     customer.

Id. ¶ 103.

Herakles challenges the sufficiency of Qwest's statements alleging its right to control Herakles, and also argues that Qwest misstates the second requirement of an agency relationship, thus failing to allege both elements with particularity. While the sufficiency of Qwest's right to control allegations is also at issue, this Court need not examine these assertions as Qwest's allegations fail on the second factor. It is not the management of affairs that evidences the agency, instead it is the "authority to act for and in the place of the principal for the purposes of bringing him or her into legal relations with third parties." DSU Aviation, 2007 WL 3456564, at *5.

Herakles asserts that an agency relationship is based on the authority of the agent to enter into contractual relations with third parties on the principle's behalf, and that Qwest has failed to allege that Herakles had any such authority. Further, Herakles argues that the duties and obligations listed by Qwest in paragraphs 103 and 104 of the FAC are not required under the RESA, and Qwest has failed to plead allegations with particularity that they are required under the alleged oral agreement.

///
///
///

11

For the purposes of this Motion, this Court will focus on Herakles's assertion that Qwest's allegations merely claim that Herakles was authorized to stand in the place of Qwest while interacting with Qwest's current or potential customers, and that this allegation is insufficient to allege an agency relationship under California law.

As noted by this Court in its prior Order, an agency relationship in this case requires that Herakles have the "authority to transact ... or manage some affair" on behalf of Qwest. DSU Aviation, 2007 WL 3456564, at *5 (citing Coupon Clearing Services, 113 F.3d at 1099). Under California law, this requirement is met if Herakles has "authority to act for and in the place of the principal for the purposes of bringing him or her into legal relations with third parties." Id.; See also Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp., 148 Cal. App. 4th 937, 964-65 (3rd Dist. 2007) ("[a]n agent or apparent agent holds a power to alter the legal relations between the principal and third persons...."). In DSU Aviation, the plaintiff met this requirement by alleging that the defendants were responsible for securing insurance and had the authority to enter into contracts with third-parties. 2004 WL 3456564, at *5. Qwest seeks to avoid this requirement by noting that the law recognizes some agents, such as brokers and attorneys, who often do not have the power to enter into contractual relations on behalf of their respective principles. However such agency relationships are recognized at law, and are not based solely on a managerial relationship existing under a contract.

///

If Qwest's allegations under this requirement were sufficient to create an agency, and thus a fiduciary, relationship between the parties, then agency relationships would be created in most, if not all, contractual relations where one party manages the affairs of the other, as long as the right to control factor is also met.  Qwest has failed to allege that Herakles had the power to alter legal relations between third parties and Qwest, and thus Qwest has failed to allege with particularity that Herakles was Qwest's agent and fiduciary.  Therefore, Qwest is unable to establish a breach of any fiduciary relationship.  Accordingly, Defendants' Motion to Dismiss Count VI is GRANTED, with leave to amend.

## CONCLUSION

Defendant's Motion to Dismiss Count VI of Qwest's FAC under Rule 12(b)(6) is GRANTED with leave to amend.  Plaintiffs are directed to file a Second Amended Complaint, should they choose to do so, not later than twenty (20) days following the date of this order.

IT IS SO ORDERED.

Dated: August 18, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE